**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                      :
JIGNESH SHAH,              :    Civil Action No.: 15-3233(FLW)
                      :
          Plaintiff,   :
                      :
         v.           :
                      :          **OPINION**
NEW JERSEY OFFICE OF HOMELAND :
SECURITY AND PREPAREDNESS,   :
                      :
         Defendant.   :
_____:

**WOLFSON, U.S. District Judge:**

Plaintiff Jignesh Shah ("Plaintiff" or "Shah") brings this employment discrimination suit against the New Jersey Office of Homeland Security and Preparedness ("Defendant" or "NJHSP"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging race and national origin discrimination. More specifically, Plaintiff claims that based on his race and/or national origin, Defendant 1) failed to promote him, 2) discriminated and retaliated against him, and 3) created a hostile working environment. In the instant matter, Defendant moves for summary judgment on all counts of the Amended Complaint ("Complaint"), arguing that some of Plaintiff's claims, including hostile work environment, should be dismissed because he failed to exhaust his administrative remedies. As to the failure to promote

claim, Defendant maintains that even after discovery, Plaintiff has come up short in proving his case. For the reasons set forth below, Defendant's Motion is **GRANTED**.

**BACKGROUND**

Shah, a South Asian of Indian descent, is currently working at NJHSP as a Principal Tech MIS, a position for which he was hired in December 2006. Defendant's Statement of Undisputed Facts ("Def. Statements"), ¶ 1. Prior to his employment with NJHSP, Shah worked as a Senior Technician MIS at the New Jersey Commerce and Tourism Commission from 2005 to 2006, and from 1999 to 2005, Shah was a Technical Support Analyst at Liz Claiborn. *Id*. at ¶ 19. As a Principal Tech at NJHSP, Shah was responsible for troubleshooting server issues and providing desktop support. *See* Pl's Dep., 46:18-48:5. In that position, Shah initially reported to his supervisor James Rankin, who later became the acting manager. Charles Pietzsch was hired to replace Rankin, and therefore, became Shah's direct supervisor during the relevant period. *Id*. at 12:9-20.

Shah's Department consisted of seven employees, each with varying job titles, but all had the same supervisors and managers as Plaintiff. Plaintiff worked closely with two other employees, Ronald Niehaus and John Kiczek. At the time Plaintiff was hired, Niehaus was a Senior Tech MIS, who was promoted to the position of Network Administrator 1 ("NA 1") in April 2007. *See* Def. Statements, ¶ 80. According to Defendant, there are two methods

2

by which employees receive promotions at NJHSP. One is through NJHSP's formal interview process, and the other is by way of submitting a request to New Jersey's Civil Service Commission ("CSC") to reclassify the employee's job title, which occurs when CSC determines that an employee performs job duties outside of his/her job description. *Id.* at ¶ 72. In 2007, upon NJHSP's request, Niehaus's Senor Tech MIS job title was reclassified by CSC, with the approval of the Governor's Office. *Id.* at ¶¶ 79-80; *see* Governor's Memorandum dated April 10, 2007. Subsequently, in October 2014, Niehaus was promoted to Network Administrator 2 ("NA 2") though NJHSP's formal interview process. Niehaus Cert., ¶ 5.

## A. *Plaintiff's Work History*

According to Shah, since the inception of his employment, he has encountered hostility from co-workers and managers. For example, Shah testified that in 2008, Niehaus told him that he looked like a "terrorist" and referred to Plaintiff as a "Paki."[1] Shah Cert., ¶¶ 34-36. At that time, Shah testified that although he reported the incident to his then-supervisor Rankin, no remedial action was taken by management. *Id.* In addition, Plaintiff maintains that both his direct supervisor, Pietzsch, and his

---

[1] According to Plaintiff, "Paki" is a pejorative term associated with terrorist activity. Shah Cert., ¶ 35.

manager, Anita Bogdan, had referred to Plaintiff, on at least one occasion, as a "Paki" and "terrorist." *Id.* at ¶¶ 33, 37. Niehaus, Pietzsch and Bogdan all deny this claim. *See* Bogdan Cert., ¶ 49; Pietzsch Cert., ¶ 75; Niehaus Cert., ¶ 68.

In January 2013, Shah arranged a meeting with Steven Gutkin, who at the time served as the Bureau Chief/NJHSP Equal Employment Coordinator,[2] regarding the level of network and server access granted to Shah. *See* Gutkin Cert., ¶ 17. At that meeting, Shah expressed his dissatisfaction with the fact that Niehaus had greater server access, and he complained that such a disparity was racially motivated. *See* Shah Cert., ¶ 46. Although, pursuant to HR policy, Gutkin asked Shah to file a formal complaint, Plaintiff did not do so. Gutkin Cert., ¶ 23.

Shah also met with Pietzsch on several occasions to express his dissatisfaction that Niehaus had greater server access, and that he was being excluded from information technology decisions. *See* Shah Cert., p. 11. According to Shah, however, based on his conversation with management, Pietzsch had instructed Niehaus to provide Shah with access to a certain SharePoint server, Shah never received such access. *See id.* at p. 12. As a result, Shah claims that he was unable to perform some of his job duties. *Id.*

---

[2]    In that role, Gutkin received potential Equal Employment Opportunity ("EEO") complaints from NJHSP employees and forwarded them to the state's EEO office. Gutkin Cert., ¶ 1.

In February 2013, Shah met with Pietzsch to discuss Shah's 2012 performance review. Shah Cert., ¶ 43. During that meeting, Shah expressed his disagreement with certain negative comments made on his review by management. *Id.* Pietzsch responded by commenting that Plaintiff's co-workers did not trust Plaintiff's work product, because Plaintiff was not always thorough and often relied upon others to complete his assigned tasks. Moreover, it was Pietzsch's view that Plaintiff's mistakes created added work for his coworkers, who were called upon to correct those mistakes. Pietzsch Cert., ¶¶ 52-53. Despite these apparent shortfalls, on numerous occasions, Plaintiff expressed to Pietzsch that he was entitled to a promotion because he essentially performed the functions of a Network Administrator 1. Shah Cert., ¶¶ 40-41.

In June 2013, another co-worker of Shah, Kiczek, accused Shah of misrepresenting his entries on timesheets, and in doing so, taking unauthorized time from work. Plaintiff met with Pietzsch about the allegation and expressed concern that the accusation was borne out of racial discrimination. Shah Cert., ¶ 51. That concern was then reported to Gutkin, and an investigation ensued. At the conclusion of the investigation, Gutkin drafted a memorandum outlining his findings. In that memorandum, Gutkin noted that Shah had previously complained to Gutkin regarding his level of access to servers, as well as Plaintiff's view that the decision to restrict access was race related. Gutkin further noted that

Shah believed that the timesheet accusation was also motivated by race. *See* Gutkin Memo, p. 3. Gutkin concluded, however, that the timesheet incident was a misunderstanding, and Shah testified that he was satisfied with that explanation at the time. Shah Cert., ¶ 56. Nonetheless, Gutkin advised Shah that he could pursue a formal complaint against NJHSP for discrimination. Gutkin Cert., ¶ 29. In that connection, Gutkin forwarded his memorandum to the Deputy Director of EEO. *Id.* However, because Shah did not ultimately file a formal complaint, the EEO did not further investigate the matter. *Id.* at ¶ 30.

Shah next claims that, in October 2013, he suffered disparate treatment when Pietzsch changed the computer storage/closet lock, without providing Shah with an access key. Shah Cert., ¶ 57. Shah further testified that he became aware that the lock was changed because other coworkers had accused him of committing theft. *Id.* However, no formal complaint was lodged against Shah. According to Shah, in order to gain access to the closet, he had to request a key, which required him to wait a few hours at a time. *Id.* In that regard, Shah complained to Pietzsch, Bogdan and other administrators. NJHSP maintains that the master key to the storage closet was made available to all employees, including Shah. *See* Pietzsch Cert., ¶ 48.

**B.** *Plaintiff's Candidacy for Network Administrator 1 and 2*

In June 2014, NJHSP posted a job opportunity for the NA 2 position. Def. Statements, ¶ 12. This position was for a senior network administrator who developed, implemented, and maintained multinetwork, multiuser Local Area Networks (LAN), Metropolitan Area Network (MAN) and or Wide Area Network (WAN). *Id.* at ¶ 13. The NA 2 also served as an Information Security Officer, ensuring network and data security. *Id.* at ¶ 14. Shah and Niehaus both applied and were interviewed for the position. The interview panel consisted of Pietzsch, Bogdan and Joy Vitoritt, who was the Director of Information Technology at the State New Jersey, Office of the Attorney General, Department of Law and Public Safety. *See* Vitoritt Cert., ¶¶ 14, 27. Indeed, to provide an added perspective on potential candidates, NJHSP routinely included interviewers from other departments who possessed the relevant technical knowledge. Def. Statements, ¶ 8.

The interviews consisted of asking the candidates identical questions regarding the technical aspects of Network Administration, and then rating each candidate in several selection criteria categories. *Id.* at ¶ 9. The interviewers recommended for promotion the candidates who rated highest on the percentage scale in the selection categories and demonstrated the strongest competency in Network Administration. *Id.* at ¶ 11.

The interview panel scored Shah average to below average in a majority of the categories comprising the selection criteria for a NA 2 position. *Id.* at ¶ 20. Each interviewer documented Shah's performance on a Contemporaneous Interview Report, and the final reports were completed between one and five days from the date of the interview. *Id.* As stated in her Report, Vitoritt's assessment was that Shah lacked the knowledge base necessary to perform the duties of a NA 2:

> [Shah] does not possess the required experience in the development implementation and maintenance of multi-network, multi-user LAN, MAN or WAN environment. Examples of some basic network questions that could not be answered were: What is ARP? What is DHCP and DNS, How do they differ? Explain the difference between a Hub, Switch and Router?

*See* Vitoritt Cert., ¶ 16. Vitoritt further noted that Shah "did not have the required background in networking to answer the questions correctly." *Id.* at ¶ 17. Additionally, it was Vitoritt's opinion that Shah lacked the requisite experience to perform the duties of a NA 2. *Id.* Pietzsch and Bogdan echoed Vitoritt's conclusions. *See* Def. Statements, ¶¶ 23-25.

Indeed, the entire panel concluded that Shah lacked the necessary experience and knowledge for the NA 2 position. In fact, according to each of the interviewers, Shah acknowledged *during the interview* that he was not the best candidate for the position and Shah stated that he would like to be considered for the

position of NA 1, once Niehaus[3] was promoted to NA 2.[4] *See* Vitoritt Cert., ¶ 18; Vitoritt's Report dated July 11, 2014; Def. Statement, ¶ 25. Ultimately, the panel unanimously recommended against promoting Shah to the position of NA 2, based on Plaintiff's failure to demonstrate that he had the knowledge and skills necessary to perform that job. Rather, Niehaus was promoted to the NA 2 position.[5]

Thereafter, Shah applied for the position of NA 1 in September 2014. The position of NA 1 was subordinate to NA 2, and it required experience in the development, implementation, and maintenance of multi-network, multi-user LAN, MAN and/or WAN environments. Def. Statements, ¶ 40. According to Defendant, when NJHSP's secretary compiled the resumes of individual candidates who would be given a formal interview for the position of NA 1, it was initially

---

[3]   As noted earlier, at the time of this interview, Niehaus was the Network Administrator 1 at the NJHSP.

[4]   As explained more fully below, Plaintiff's deposition testimony is consistent with his concession made during the interview.

[5]   The interview panel unanimously scored Niehaus in the top 5% in almost all of the categories comprising the selection criteria for the NA 2 position, and the interviewers all indicated that he performed exceptionally well. Def. Statements, ¶ 32. For example, in her Contemporaneous Interview Report, Vitoritt noted that Niehaus "demonstrated an advanced knowledge of all aspects of network technology" and "answered all questions accurately and completely using examples from his work experience." Vitoritt Cert., ¶ 23; Vitoritt's Report dated July 11, 2014. Vitoritt rated Niehaus "outstanding" on NJHSP's interview rubric. *Id.*

determined that Shah's resume did not meet the minimum requirements for the position. *Id.* at ¶ 41. Despite the apparent shortfalls in his candidacy, management determined that Shah should be given an interview in order to provide him with an equal opportunity to compete. *Id.* at ¶ 43; Pietzsch Cert., ¶ 30; Niehaus Cert., ¶ 19.

The interview panel consisted of Vitoritt, Pietzsch, Niehaus, and William Kelly, the fiscal resource manager at NJHSP. Def. Statements, ¶ 44. For this interview, Shah scored "average" (middle 50%) in virtually all of the categories comprising the selection criteria. *Id.* at ¶ 45. Like the NA 2 interview, each of the interviewers completed a contemporaneous interview report to document the interviewees' performance. Again, according to the Reports, Shah did not answer questions about Network Administration satisfactorily. Vitoritt noted that Shah "does not possess the base technical knowledge of the network equipment that is installed within the [NJHSP] office." Vitoritt Cert., ¶ 30. She further noted that Shah "justifies his failure to answer questions about the currently installed technology by claiming he does not have access to the equipment nor the training to seamlessly transition to the Network Administrator 1 position." Vitoritt Report dated September 30, 2014, p.3. Vitoritt concluded that Shah required additional training before he could be promoted, a conclusion with which Shah agreed. *See id.* at p. 3.

The rest of the panel concurred with Vitoritt's opinion. *See* Def. Statements, ¶¶ 49, 51-53. Pietzsch explained in his Report that Shah "does not have the experience the other candidates have. When questioned about his resume [Shah] was unable to answer questions about things he claimed he did." Pietzsch's Report dated September 29, 2014, p. 1. Pietzsch also commented that Shah "very much wants to be a Network Admin, but . . . he has done nothing on his own to improve his knowledge. He continues to believe that he has some entitlement to the position." *Id.* at p. 2. Further, Niehaus also reported that Shah was "unable to answer clearly all of the questions/scenarios posed during the interview," and that his "resume claimed administration and deployment of exchange when that [was not] the case at all." Niehaus Cert., ¶¶ 21-22; Niehaus Report dated September 26, 2014, p. 1. As a result, the panel unanimously did not recommend Shah for promotion to NA 1, because he lacked the requisite knowledge and skills necessary to perform the duties of NA 1. *Id.* at ¶ 55.

The panel also interviewed Eric Burd for the same position. It was the opinion of the panel that Burd was more qualified than all the candidates who applied. In that regard, Burd scored in the top 5% and top 25% in all the selection criteria. *See* Def. Statements, ¶ 57. Burd was subsequently recommended for the position of NA 1 by the panel. However, Burd was ultimately

rejected by the Governor's office, and the NA 1 position was subsequently closed. *Id.* at ¶ 63.

C.    *Plaintiff's EEOC Charge*

In November 2014, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and/or national origin discrimination based solely on NJHSP's failure to promote Plaintiff to the positions of NA 2 and 1. *See* Pl.'s EEOC Charge dated November 24, 2014. Plaintiff also alleged that Defendant retaliated against him for filing an informal complaint of discrimination with the State's EEO.

Shah stated the following in his Charge:

> I have been denied the promotion of Network Administrator 1. I applied for the position once it was posted. I meet all the requirements. I was interviewed, but I was not selected. The position was given to an employee with less experience than I. I believe I was not selected due to my race and national origin. I believe I have been discriminated against in violation of Title Vii of the Civil Rights Act, as amended.

*Id.* at p. 1. Shah reasoned that he was not chosen for the NA 1 position because he was denied the "equal training opportunities and experience on the job." *Id.* at p. 2. Furthermore, Shah went on to allege that he was also improperly denied the promotion for the NA 2 position. *Id.*

Due to Plaintiff's EEOC Charge, NJHSP investigated Plaintiff's allegations of discrimination and the alleged failure to promote. NJHSP responded to Plaintiff's Charge on January 15,

2015, in a six-page letter by Deputy Attorney General Steven Hahn. Based on his investigation, Hahn concluded that Shah "simply was not qualified to be a network administrator.  Any decision not to hire him as a NA 2 or NA 1 was based only on his lack of technical ability . . . ."  NJHSP Response dated January 15, 2015, p. 6. After receiving the State's response, the EEOC issued Plaintiff a right to sue letter on April 13, 2015.

D.    *Filing of this Suit*

Plaintiff filed the instant action in May 2015.  In his Amended Complaint, Plaintiff asserts three causes of action: 1) intentional discrimination in violation of Title VII based on his race and/or national origin; 2) hostile work environment in violation of Title VII based on race; and 3) retaliation in violation of Title VII based on race.  After the close of discovery, Defendant moved for summary judgment on all counts.

**DISCUSSION**

I.    **Standard of Review**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party,"

13

and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id*. at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim"

or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact"; however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## II. EEOC Charge

At the outset, Defendant argues that Plaintiff has failed to exhaust his administrative remedies as to his hostile work environment claim, as well as any discrimination and retaliation claims not based on Defendant's alleged failure to promote. In his opposition, Plaintiff does not offer any reason as to why he failed to submit an EEOC charge regarding those allegations. Indeed, Plaintiff admits that, in his EEOC Charge, he did not allege any acts of discrimination beyond failure to promote and retaliation for protected activity under Title VII. *See* Pl.'s Response to Def. Statements, ¶ 5. Rather, Plaintiff argues that he should be excused from exhaustion, because he filed informal, internal complaints of discrimination with the State's EEO for incidents not alleged in his EEOC charge. Plaintiff's argument is without merit.

Title VII provides strict guidelines for bringing an action against an employer for employment discrimination, requiring that claimants first file a timely action with the EEOC within 180 days of any alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1). It is only after the EEOC charge has been filed, an investigation completed and a "right to sue letter" issued, that a claimant is considered to have exhausted his or her administrative remedies. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

This framework was established "to resolve discrimination claims administratively through cooperation and voluntary compliance in an informal, noncoercive manner." *Id.* As such, "the aggrieved party is not permitted to bypass the administrative process" and "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Webb v. City of Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)). Stated differently, a plaintiff is only excused from exhausting his administrative remedies when "the acts alleged in the subsequent ... suit are fairly within the scope of the prior EEOC complaint [charging dis crimination], or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)(quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)(*per curiam*)); *see also Barzanty v. Verizon PA, Inc.*, 361 Fed. Appx. 411, 413-14 (3d Cir. 2010)("Before filing a lawsuit, a plaintiff must exhaust her administrative remedies by filing a timely discrimination charge with the EEOC. The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action. The ensuing suit is limited to claims that are within the scope of the initial administrative charge.")(citations omitted).

Here, as noted above, the EEOC Charge filed by Plaintiff only contained allegations that Defendant failed to promote Shah based on his race and/or national origin, and that Defendant retaliated against Shah for filing an informal complaint of discrimination with the State's EEO. In fact, Plaintiff clarifies in his briefing that his discrimination claim is solely based on a theory of failure to promote, unrelated to allegations that Defendant denied him certain training opportunities or server access. *See* Pl. Opp., p. 19.

Instead, Plaintiff argues that the sum of Defendant's alleged wrongful conduct constitutes a hostile work environment, and that he should be excused from exhaustion with respect to those allegations, as a result of his prior complaint to the state EEO officer regarding the same alleged misconduct. Plaintiff misses the point.

Under the applicable exhaustion standard, to assert allegations based on a hostile work environment, either 1) Plaintiff must have directly alleged such claims in his EEOC Charge; or 2) Plaintiff's hostile work allegations must reasonably fall within the scope of Plaintiff's EEOC Charge. Neither condition is met in this case. First, it is clear that Plaintiff failed to include allegations concerning a hostile work environment in his EEOC Charge; simply making internal — and informal — complaints do not suffice. Second, the Court cannot

18

find that Plaintiff's hostile work environment allegations — which involve complaints of a disparity in access to network servers and equipment closets — are fairly within the scope of Plaintiff's EEOC Charge, particularly since the Charge solely complained of Defendant's failure to promote.

Indeed, without making a formal EEOC charge regarding the hostile work environment, Defendant had no notice of, or opportunity to oppose, such a claim during the EEOC investigation. Because the Court must limit claims to those reasonably expected to grow out of, or those fairly within the scope of the EEOC Charge, Plaintiff's hostile work environment claim is dismissed for failure to exhaust. *See Rowan v. City of Bayonne*, 474 Fed. Appx. 875, 877-878 (3d Cir. 2012)(finding that because plaintiff's EEOC charge only addressed defendant's failure to promote and retaliation based on first amendment grounds, plaintiff's hostile work environment claim is not fairly within the scope of the EEOC charge).

## II. Failure-to-Promote

An employee bringing a failure to promote claim under Title VII proceeds under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). In that regard, as his initial burden, the plaintiff must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. In order to do so, the employee must demonstrate:

19

(1) that he was a member of a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that another, not in the protected class, was treated more favorably. *Id.*; *Fuentes v. Borough of Watchung*, 286 Fed. Appx. 781, 784 (3d Cir. 2008).

Here, Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination because he has failed to sufficiently show that he was qualified to be promoted to the positions of NA 1 or NA 2. Defendant does not otherwise dispute that Plaintiff has satisfied the remaining elements of his failure to promote claim.[6] And, to the extent the Court concludes that a *prima facie* case has been established, Defendant contends that it has presented a legitimate, non-discriminatory reason for the Plaintiff's rejection. Defendant further maintains that the Plaintiff has failed to come forth with evidence proving that the reason was pretextual. For the reasons stated below, the Court agrees with Defendant in all regards.

---

[6] Although Defendant argues in passing that Plaintiff also cannot meet the fourth element because the position of NA 1 was never filled and ultimately closed, Defendant did in fact made an initial decision to hire Burd, a nonmember of a protected class. So long as Plaintiff can show that he was treated less favorably than Burd, Plaintiff can satisfy his *prima facie* burden as to the last element. *See Fuentes*, 286 Fed. Appx. at 784. Defendant has not made any argument in that regard, and thus, I find for the purposes of this motion, Plaintiff has made a *prima facie* showing on this element.

**A.   *Whether Plaintiff was Qualified for Promotion***

The Third Circuit Court has made clear that within the Title VII context of assessing a *prima facie* case of failure to promote, a district court must view a plaintiff's "qualifications" based on objective criteria. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 320 (3d Cir. 2000) (stating "we have held that . . . objective job qualifications should be considered in evaluating a plaintiff's *prima facie* case . . . .")(citation omitted); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995)("[W]e determine a plaintiff's qualifications for purposes of proving a *prima facie* case by an objective standard.")(citation omitted). Thus, a plaintiff's own subjective opinion that he was qualified for a given position is immaterial. *See Kepple v. GPU Inc.*, 2 F. Supp. 2d 730, 741 (W.D. Pa 1998)("[T]he employer is entitled to establish the job requirements and the plaintiff must offer more than his own opinion that he is qualified") (citing *In re Carnegie Ctr. Assocs.*, 129 F.3d 290, 293 (3d Cir. 1997)).

Here, Defendant argues that Plaintiff is unqualified for the NA 1 and NA 2 positions because he did not have the adequate network administration experience.  In that connection, Defendant submits that during the interviews, Plaintiff failed to satisfactorily answer objective network technology questions, which led the panel to score Plaintiff poorly.  In response, Plaintiff maintains that his qualifications are evidenced by his

employment history, performance evaluations, and "Defendant[]
intentionally denying him access to [NJHSP] network and servers."
Pl. Opp. Br., p. 23.

As a preliminary matter, while much of Plaintiff's Opposition
focuses on how management, including Niehaus, sought to limit his
access to servers and training opportunies due to racial bias,
that alleged misconduct, however, does not relate to Plaintiff's
objective qualifications. Indeed, Defendant's alleged misconduct
in precluding Plaintiff from accessing certain network servers or
training opportunities does not relate to any objective criteria
for the purposes of assessing Plaintiff's qualifications, and
thus, bears no relevance in assessing the *prima facie* case for
failure to promote.

Further, although Plaintiff boasts that his employment
history and positive evaluations clearly establish his eligibility
for promotion to the positions of NA 1 and NA 2, those evaluations
also do not show that, objectively, Plaintiff was qualified to
perform the duties of a NA 1 or NA 2. Stated differently,
regardless of Plaintiff's performance as a Principal Technician
MIS, as his *prima facie* burden, Plaintiff must proffer sufficient
evidence that he was objectively qualified for the positions of NA
1 and NA 2, and he has not done so. *See Williams v. R.H Donnelly
Corp.*, 368 F.3d 123, 127 (2d Cir. 2004)(holding that in determining
whether a plaintiff has met his *prima facie* burden of demonstrating

that he was qualified for a position, "being 'qualified' refers to the criteria the employer has specified for the positions," and a plaintiff's subjective belief he is qualified will not suffice); *Visnikar v. Dep't of Envtl. Prot.*, No. 02-963, 2004 U.S. Dist. LEXIS 3645, at *28 (W.D. Pa. Jan. 27, 2004)("[a]s the unrefuted evidence demonstrates that the Plaintiff simply does not meet the objective criterion required for the position of Licensed Professional Geologist, the [court] concludes that the Plaintiff is not 'qualified' and therefore has failed to establish a *prima facie* case."); *Matczak*, 136 F. 3d at 938; *Smith v. Twp. of E. Greenwich*, 519 F. Supp. 2d 493, 507 (D.N.J. 2007).

Tellingly, each of the panelists who interviewed Plaintiff for the positions of NA 1 and NA 2, concluded that Plaintiff did not correctly answer network administration and technical questions. According to Vitoritt, Plaintiff could not answer basic network inquiries. *See* Vitoritt Report, p. 1. More importantly, Plaintiff lacked the required experience in the development, implementation and maintenance of multi-network, multi-user LAN, MAN or WAN environments. *Id; see* Notices of Vacancy NA 1 and NA 2("experience in the development, implementation, and maintenance of multi-net-work, multi-user Local Area Networks (LAN), Metropolitan Area Networks (MAN), and/or Wide Area Networks (WAN) environments."). A review of Plaintiff's own resume reveals that he lacked the type of experience required for both positions. *See,*

*generally,* Pl. Resume.  As Plaintiff indicated on his resume, his work experience, as a Principal Technician MIS, centers on troubleshooting server issues and providing IT support for agency users.  *Id.* at p. 1.

Moreover, while Plaintiff points to his prior work experiences to show that he qualified for promotion, based on Plaintiff's own testimony and his resume, objectively, Plaintiff has failed to substantiate that claim.  First — like his current position — Plaintiff's prior work as a Senior Tech MIS consisted primarily of maintaining and troubleshooting networks and servers for the New Jersey Commerce and Tourism Commission.  *See* Pl. Resume p. 2.  In that position, Plaintiff also assembled and installed computer systems, workstations, and other hardware.  *Id.* Those types of experience, however, are not commensurate with the technical requirements of NA 1 and NA 2.  Likewise, Plaintiff's former experience at Liz Claiborne did not qualify him.  Indeed, with respect to this prior employment, Plaintiff testified that he lacked experience in developing networks — a necessary criterion for both the NA 1 and NA 2 positions:

> Q.  And so developed a multi network multi user
>     Local Area Network at Liz Claiborne?
>
> A.  I didn't develop it.  I troubleshooted issues.
>
> Q.  Did you implement --
>
> A.  Implemented some of the systems.

> Q. But you don't have experience in developing these sort of networks?
>
> A. Developing a network is a total different ball game. No, I have not developed any networks, no.
>
> Q. And you also do not have experience in developing Metropolitan Area Networks, correct?
>
> A. Correct.

*See* Pl. Dep., 182:5-19.

Accordingly, because Plaintiff has failed to present any genuine issue of material fact that he is objectively qualified to be promoted to the positions of NA 1 or NA 2, he cannot satisfy his burden of establishing a *prima facie* case. While Summary judgment is appropriate on this basis alone, as explained below, Defendant had legitimate, nondiscriminatory reasons for denying Plaintiff the requested promotions, and more importantly, he has failed to show that those reasons were pretextual. The Court turns to that inquiry next.

### B. *McDonnell-Douglas* Burden Shifting

If the employee succeeds in establishing a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the failure to promote. *Id.* "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable

employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id.* (emphasis in original). This is a "relatively light burden." *See id.*

Relevant in a failure to promote case, "[a]n employer must be granted substantial discretion to exercise subjective judgment in the rendering of employment decisions . . . ." *Johnson v. Penske Truck Leasing Co.*, 949 F. Supp. 1153, 1172 (D.N.J. 1996). "Unless there is evidence of discrimination, the court is neither permitted to get involved in the subjective business decision of the employer, nor set its own employment standards for the employer." *Jones v. Temple University*, No. 12-5349, 2014 U.S. Dist. LEXIS 94253, at *28 (E.D. Pa. Jul. 10, 2014)(citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 527 (3d Cir. 1992)). Stated differently, a plaintiff's subjective comparison of qualifications does not cast sufficient doubt on the defendant's stated legitimate reasons for its selection. *Luta v. State of Delaware, Dept. of HSS*, 847 F. Supp. 2d 683, 691 (D. Del. 2012) (citing *Bennun v. Rutgers State University*, 941 F.2d 154, 170 (3rd Cir. 1991) ("This Court has held that more than a denial of promotion as a result of a dispute over qualifications' must be shown to prove pretext.")).

Next, once the employer meets its burden, the burden of production shifts back to the employee who must then show that the proffered reason is merely a pretext for actual discrimination. *See Fuentes*, 286 Fed. Appx. at 784. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764 (emphasis and internal citations omitted).

"To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765. Rather, the plaintiff "must demonstrate [] weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id*. (emphasis omitted). "While this standard places a difficult burden on the plaintiff, '[i]t arises from an inherent tension between the goal

of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'" *Id.*

Here, as a legitimate, nondiscriminatory reason for rejecting Plaintiff for both NA positions, Defendant proffers evidence that it selected Niehaus for the position of NA 2 based on the merits of Niehaus' superior experience and knowledge as compared to those of Plaintiff. Defendant submits that it offered the position of NA 1 to Burd for similar reasons. According to Defendant, both Niehaus and Burd were far more qualified than Plaintiff, and more compellingly, based on the interviews, Plaintiff simply did not demonstrate that he was competent in performing the job requirements of the NA positions. Because Defendant's burden of production is "light," I find that Defendant had a legitimate, nondiscriminatory reason for denying Plaintiff's request for a promotion. Having made that finding, the burden shifts back to Plaintiff to demonstrate that Defendant's stated reasons were pretextual.

To discredit Defendant's seemingly legitimate reasons, Plaintiff argues, first, that his supervisors had taken certain actions against him that impacted his employment opportunities, such as the denial of access to NJHSP network servers and the lack of training. Plaintiff goes on to provide specific details of the types of training that he was forbidden to participate in, while other co-workers were permitted to so participate. Indeed,

Plaintiff's argument boils down to that, management, including those managers and supervisors who interviewed him, subjected Plaintiff to a pattern of discriminatory conduct that ultimately impacted his chances of being promoted. In addition, Plaintiff also accuses the interviewers of harboring racial animus that resulted in their negative evaluation of his interview performance. While Plaintiff asserts that all of the employment issues that arose during his time at NJHSP were presumably based on race and/or national origin, his argument in this regard is belied by his own testimony; in the end, Plaintiff simply has proffered little evidence that Defendant's decision to reject his candidacy for promotion was racially motivated, such that he has demonstrated some inconsistencies or implausibilities to discredit Defendant's legitimate reasons.

The Court need look no further than Plaintiff's own words to sum up the lack of evidence of discrimination in this case. On the issue of access:

> Q. Why do you believe that your restriction of access was due to your race or national origin?
>
> A. What else could it be? I've been doing every single thing that I would ask for, if not more than what I was asked for. And despite that, my level of access was restricted based off my race.
>
> Q. And why do you believe it was based upon your race?

> A. Because there is no other factual basis. I
> always did my job duties as I was asked of, or
> if not, I've gone over and above and beyond,
> whether it was during business hours or after
> hours.

Pl. Dep., 35:1-14. When asked why Plaintiff believed that Pietzsch discriminated against him, Plaintiff answered that it was his opinion that unfavorable employment decisions made against him by Pietzsch were due to Plaintiff's race; however, other than citing to those very decisions with which Plaintiff disagreed, Plaintiff was unable to proffer any other evidence to demonstrate a discriminatory intent. *See id.* at 40:19-41:25.

For example, on the issue of mistrust of Plaintiff among management, including Pietzsch, Plaintiff stated the following:

> A. . . . [T]here has been many times stated to me
> by Charles Pietzsch himself that there is a
> trust issue between me and the rest of the
> group.
>
> Q. And what is that trust issue?
>
> A. You can ask him. I've been at [NJHSP] for 10
> years. I've done my job honestly. I've gone
> over and beyond. Besides my IT duties, I have
> functioned many other things . . . .
>
> Q. Is the trust issue connected to your race or
> national origin?
>
> A. . . . I think it's definitely connected to my
> race because what else could there be? I've
> been there for 10 years, and why would
> somebody keep repeatedly bring it to me saying
> that there's a trust issue? If it's not a race,
> then what else is it?

*Id.* at 23:24-24:21. Indeed, without any concrete evidence, Plaintiff insists that race was the only reason why his coworkers mistrusted him.[7] However, at the summary judgment stage, Plaintiff's own testimony is insufficient to demonstrate that Defendant's stated reasons for denying Plaintiff's promotion requests were pretextual.

Without delving into all of the details regarding certain acts that Plaintiff perceived to be discriminatory, none of those acts are probative in demonstrating "implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 764. Simply put, the relevant inquiry here is whether Defendant's stated reason — that Plaintiff was unqualified for the NA positions and that Niehaus and Burd were more qualified — was implausible. And, on that issue, Plaintiff's case falls short.

In sum, outside of his own, subjective beliefs, Plaintiff fails to adduce evidence that Defendant's decision to deny Plaintiff a promotion was motivated by race, rather than a

---

[7] Tellingly, while it is Plaintiff's position that he did raise his bias concerns to the EEO Officer, Gutkin, Plaintiff never took the step of formally filing a complaint against management for its alleged acts of discrimination, even when prompted to do so by Gutkin.

determination that Plaintiff was unqualified to perform the job duties of a NA 1 or NA 2. Plaintiff thus lacks the requisite evidence of pretext to defeat summary judgment. *See Jones v. Sch. Dist.,* 198 F.3d 403, 414 (3d Cir. 1999)(affirming summary judgment for insufficient evidence of pretext where plaintiff's allegations were based solely on his beliefs and no record evidence); *Pineda v. Phila. Media Holdings LLC*, 542 F. Supp. 2d 419 (E.D. Pa. 2008)(finding that summary judgment cannot be defeated simply based on plaintiff's own subject belief of discrimination); *James v. Allentown Bus. Sch.*, No. 01-857, 2003 U.S. Dist. LEXIS 12046, at *41 n.14 (E.D. Pa. June 2, 2003)(finding that plaintiff cannot survive summary judgment based on his own deposition testimony alone); *Player v. Motiva Enters. LLC*, No. 02-3216, 2006 U.S. Dist. LEXIS 2288, at *40 (D.N.J. Jan. 20, 2006)(same); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999)("It is well-settled in employment discrimination cases that the plaintiff's subject belief that he has been discriminate against is insufficient to raise an inference of discrimination and does not allow the plaintiff to survive summary judgment."); *Bradley v. Harcourt, Brace & Company*, 104 F.3d 267, 270 (9th Cir. 1996)(affirming summary judgment on sexual discrimination claim where plaintiff produced no "specific, substantial evidence of pretext" to rebut defendant's explanations for termination and relied primarily on her subject beliefs as to her competence);

*Fadia v. New Horizon Hosp.*, 743 F. Supp. 2d 158, 168 (W.D.N.Y. 2010)("[T]he Plaintiff's subject belief that he was discriminated against is insufficient to create a triable issue of fact."); *Kloss v. Ball State Univ.*, No. 06-0833, 2007 U.S. Dist. LEXIS 85790, at *23 (S.D. Ind. Nov. 19, 2007)("A plaintiff's [subjective] belief that she is the victim of unlawful discrimination does not raise a genuine issue of fact that requires a trial.").

Even taking as true Plaintiff's unsubstantiated allegations that the discriminatory environment at NJHSP shows that the NJHSP-affiliated interviewers did in fact harbor racial animus towards Plaintiff, the fact remains that Vitoritt, a non-NJHSP-affiliated and impartial interviewer, also recommended against promoting Plaintiff, due to Plaintiff's lack of qualifications. As noted earlier, pursuant to NJHSP's standard practice, Vitoritt was brought in as an outside interviewer to ensure the integrity of the process. Plaintiff does not dispute that Vitoritt was impartial, or that she possessed the technical knowledge to adequately assess candidates for the NA positions. Significantly, Vitoritt clearly opined that Plaintiff was not qualified for either NA position. Indeed, as I have set forth in detail above, Vitoritt concluded that Plaintiff did not possess the *basic* network and technological skills to succeed as a Network Administrator. Rather, Vitoritt, like the rest of the panel, found, based on objective and subjective criteria, that Niehaus and Burd were more

qualified for the positions of NA 2 and NA 1, respectively.[8]
Plaintiff has not shown — or even alleged — that Vitoritt's
opinions were somehow tainted by discriminatory means.

Accordingly, for all these reasons, no reasonable jury could
find that Defendant's stated nondiscriminatory reasons for not
promoting Plaintiff were pretexual. Summary judgment is,
therefore, granted on Plaintiff's failure to promote claim under
Title VII.

## III. Retaliation

To establish a *prima facie* case of retaliation under Title
VII, a plaintiff must show that: "(1) [he] engaged in a protected
activity under Title VII; (2) the employer took an adverse action
against [him]; and (3) there was a causal connection between the
employee's participation in the protected activity and the adverse
employment action." *Wilkerson v. New Media Tech. Charter Sch.*,
Inc., 522 F.3d 315, 320 (3d Cir. 2008).

Here, on his claim of retaliation, Plaintiff argues that
"[b]ut for [P]laintiff's complaint to Defendant about the
hinderance to perform his employment duties it is arguable whether

---

[8]    Plaintiff argues that because his experience exceeded those
of Niehaus and Burd, Defendant's hiring decisions were
discriminatory.   Plaintiff's argument lacks merit.   As I have
already stated, Plaintiff's own subjective comparison of
qualifications does not cast sufficient doubt on Defendant's
stated legitimate reasons for its selections. *Luta,* 847 F. Supp.
2d at 691; *Bennun,* 941 F.2d at 170.

[NJHSP] would have stepped up the hostility to grant his access to the network and servers and ultimately deny promotional opportunities." Pl. Opp. Br., p. 33. In a conclusory fashion — without citing evidence or making any legal arguments — Plaintiff asserts that "[t]here is no other causation between the protected activity and the retaliatory conduct that [culminated] in the denial of promotional opportunities for Plaintiff." *Id.*

At the outset, I note that to the extent that Plaintiff's retaliation claim is premised on adverse employment actions other than the alleged failure to promote, those allegations cannot be the bases for retaliation, because, as I have already explained, Plaintiff has failed to exhaust his administrative remedies on those bases. Rather, the only adverse employment action relevant here, is the allegation that Defendant retaliated against Plaintiff by denying him employment advancements. But, on that issue, for the same reasons that Plaintiff has failed to establish discriminatory animus for his failure to promote claim, Plaintiff has failed to show that there is a causal link between the denials of promotions and his protected activity of submitting his informal complaints to Gutkin. Accordingly, summary judgment is appropriate with respect to Plaintiff's retaliation claim, as well.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.  Plaintiff's claims are dismissed.

Dated: March 29, 2018                    /s/ Freda L. Wolfson
                                         Hon. Freda L. Wolfson
                                         United States District Judge